IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WELLS FARGO BANK, N.A.,

      Plaintiff,

v.

SFPD II, LLC and BRENT
SCARBROUGH,

      Defendants.

CIVIL ACTION NO.

1:11-cv-04001-JEC

## ORDER AND OPINION

This case is before the Court on plaintiff's Motion for Summary Judgment [30]. The defendants have also filed Objections To and a Motion to Strike [35] portions of the affidavit used in support of the plaintiff's motion for summary judgment. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants' Objections and Motion to Strike [35] should be **DENIED** and the plaintiff's Motion for Summary Judgment [30] should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff filed this case to collect the outstanding principal and interest due on a commercial loan. (Compl. [1] at ¶¶ 8-24.) The background of this case is relatively straightforward and largely undisputed. In October 2007, South Fulton Parkway Development, LLC

("Borrower") executed and delivered to the plaintiff, Wells Fargo Bank, a loan agreement that set out the terms and conditions of the loan, and a promissory note in the principal amount of $3,950,000. (*Id.* at ¶¶ 8-10 and Stipulation of Facts and Admissibility pf Documents ("Stipulation") [22] at ¶¶ 1-3.) At the time of execution of the above documents, repayment guarantee agreements were executed by defendants SFPD II, LLC and Brent Scarbrough. (*Id.* at Exs. 3 & 4.) Through these guaranty agreements, the defendants promised the full and prompt payment of any amount due under the note. (*Id.*)

Beginning October 2007, plaintiff Wells Fargo made loans and advanced funds to the borrower, SFPD, pursuant to the note. (Stipulation [22] at ¶ 11.) When the note matured on April 12, 2009, neither the borrower nor the defendant-guarantors paid the amounts due under the note and the loan agreement. (*Id.* at ¶¶ 9, 18-20, & 23-28.) In July 2010, plaintiff sent the defendants a notice of non-payment and demand for the immediate payment of the unpaid balance. (*Id.* at Ex. 6.) Pursuant to O.C.G.A. § 13-1-11(3), this letter informed the defendants that they must pay the balance within 10 days to avoid being liable for the plaintiff's attorneys' fees. (*Id.*)

Not receiving payment in full from either the borrower or the defendant-guarantors, plaintiff foreclosed on available collateral that secured the note. (Pl.'s Mot. for Summ. J. [30].) The amount earned at the nonjudicial foreclosure was subsequently applied to the

2

outstanding balance and reported to the Georgia Superior Court, pursuant to O.C.G.A. § 44-14-161. (*Id.*) Still having received no payment, plaintiff filed the present suit. As of May 31, 2012, the total amount due under the note was approximately $1.83 million, which includes about $1.4 million in principal and $413,000 in interest. (Aff. of Baker [30] at ¶¶ 23-24.) Both the loan agreement and the guaranty agreements contain provisions that require the defendant-guarantors to pay attorney's fees and costs incurred by plaintiff in collecting the Debt balance. (Stipulation [22] at Exs. 1, 3, & 4.)

Plaintiff has filed a motion for summary judgment on its claim to recover the amounts due under the note and its claims for statutory attorney's fees, pursuant to O.C.G.A. § 13-1-1. (Pl.'s Mot. for Summ. J. [30].) In response to the plaintiff's motion, the defendants argue (1) that the plaintiffs have failed to offer admissible evidence regarding the amount owed under the note and (2) that plaintiff is entitled only to the attorney's fees actually incurred, not fees derived from the statutory calculation. (Defs.' Resp. to Pl.'s Mot. for Summ. J. ("Defs.' Resp.") [33].)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file and any affidavits, show

3

"that there is no genuine [issue] as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is material if, "under the applicable substantive law, it might affect the outcome of the case." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial burden of asserting the basis for his motion. *Id.* at 323. When evaluating whether this burden has been met, "the district court must review the evidence and all

4

factual inferences drawn therefrom, in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). Once this initial burden is met, then the non-movant must go beyond the pleadings to establish that there exists a genuine issue of material fact. *Id*. The non-movant may satisfy this requirement by presenting competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

## II. <u>DEFENDANTS' LIABILITY UNDER GUARANTY AGREEMENT</u>

Plaintiff seeks judgment on the guaranty agreements executed by defendants. Once a creditor produces a promissory note and a guaranty that has been duly executed, "a prima facie right to judgment as a matter of law [is] established, and the burden shift[s] to [the debtors] to produce or point to evidence in the record which establishe[s] an affirmative defense." *Secured Realty & Invs., Inc. v. Bank of N. Ga.*, 314 Ga. App. 628, 629 (2012). *See also Shropshire v. Alostar Bank of Commerce,* 314 Ga. App. 310, 315 (2012); *Angel Bus. Catalysts, LLC v. Bank of the Ozarks*, 316 Ga. App. 253, 257 (2012). An admission of indebtedness under a note illustrates that the creditor has met its initial burden and has established its prima facie case for recovery. *Pollard v. First Nat'l Bank of Albany,* 169 Ga. App. 598, 598 (1984). *See also Shropshire,* 314 Ga. App. at 315 (concluding that absence of any dispute as to whether defendants

5

signed the guarantees establishes lender's prima facie right to recover). Moreover, the debtor must point to specific facts in the record to establish an affirmative defense. *Secured Realty*, 314 Ga. App. at 629.

In the present case, defendants SFPD II and Scarbrough admit that they executed the guaranty agreements. (Defs.' Resp. to Pl.'s Statement of Material Facts [34] at ¶¶ 6-9.) Defendants also admit that they did not pay the amount due at the maturity date and have not paid the outstanding principal and interest amounts due under the note and the loan agreement. (*Id.* at ¶¶ 23-28.) In fact, the defendants do not directly deny any of the facts set forth by the plaintiff. Instead, they simply argue that the loan history statements produced by the plaintiff in support of its motion are not admissible and that the summary judgment motion should therefore be denied. (*Id.*)

Even if the defendants were correct in their contention that the loan records proffered by plaintiff are inadmissible, the latter objection goes only to the amount of money actually owed, not to defendants' liability for any amounts still due. *See Shropshire,* 314 Ga. App. at 315 (affirming summary judgment as to liability of debtors after concluding that the debtors' argument "goes to the issue of the *amount* of money owed, not to liability vel non.")(emphasis in original). As noted above, a creditor must only

6

prove that the guaranty was duly executed to establish a prima facie right to recovery. Here, the defendants admit that they executed the agreements. Further, they have identified no defenses that would preclude summary judgment *as to their liability*. Accordingly, summary judgment is appropriate for plaintiff as to the liability of the defendants for any amounts that are due under the note and is **GRANTED** to plaintiff as to that part of its motion for summary judgment seeking to establish the liability of the defendants.

## III. <u>AMOUNT OWED BY DEFENDANT GUARANTORS</u>

Plaintiff also argues that there is no genuine issue of material fact as to the amount due on the loans. In support of its motion for summary judgment on this issue, plaintiff has submitted the affidavit of a Senior Vice President, Nathan E. Baker. (Aff. of Baker [30].) In his affidavit, Mr. Baker sets out the amounts that are due and owing under the loan based on documents that have been attached to his affidavit as exhibits. (*Id.* at ¶¶ 20, 23-26, & 28.)

Defendants argue that the documents Baker relies on for his calculations are not admissible, and they object to the Court's consideration of them. Specifically, defendants argue that these documents are summaries and that the plaintiff has failed to properly establish the foundation for admitting them under FED. R. EVID. 1006. (Defs.' Resp. [33] and Defs.' Objections and Mot. to Strike [35].) Plaintiff, however, contends that the materials relied upon by Baker

7

and attached to his affidavit are admissible under FED. R. EVID. 803(6), otherwise known as the business records exception. (Pl.'s Mot. Leave to File and Resp. to Defs.' Objections and Mot. to Strike ("Pl.'s Resp.") [36].)

###### A. Admissibility Of The Loan History And Payoff Statements

A court may only consider admissible evidence in ruling on a motion for summary judgment. FED. R. CIV. P. 56; *Mersch v. City of Dallas*, 207 F.3d 732, 734-35 (5th Cir. 2000). In order for the business records exception to the hearsay rule to apply, it must be shown that "(A) the record was made at or near the time [of the event] by . . . [a person] with knowledge; (B) the record was kept in the course of a regularly conducted activity of the business . . . [and that the] (C) making the record was a regular practice of that activity." FED. R. EVID. 803(6). These conditions can be "shown by the testimony of the custodian or another qualified witness." *Id.*

In his affidavit, Baker relies on two documents: the loan history statement and the payoff statement with post-foreclosure interest schedule attached. For these documents to qualify under the business records exception, Baker must be a "custodian" or "qualified witness" under Rule 803(6) and must demonstrate that the documents meet the other requirements of the rule. Baker is a Senior Vice President of Wells Fargo and, in this capacity, maintained custody and control of the records produced in this suit. (Aff. of Baker

[30] at ¶¶ 3-4.)  He also attests, under oath, that the records

attached were made and prepared in the regular course of business by

the bank, that they were made at or near the times of the

transactions, and that they were made and prepared by individuals

with knowledge of the transactions. (*Id.* at ¶ 26.)  On its face, the

affidavit properly authenticates the records being relied upon and,

thus, qualifies them for admission under the business records

exception.  Further, this Court cannot find, nor do the defendants

point to,[1] any evidence that calls into question the trustworthiness

of the documents.  *See* FED. R. EVID. 803(6)(E).

Defendants' argument that the attachments constitute

inadmissable summaries is also unpersuasive.  Rule 1006 provides that

a party "may use a summary, chart, or calculation to prove the

content of voluminous writings [] that cannot be conveniently

examined in court."  FED. R. EVID. 1006.  Rule 1006 was designed as a

way of admitting evidence when the contents of an entire volume were

too large and when a summary therefore "offers the only practicable

means of making [the] contents available to [the] judge and jury."

*Id.* at Notes of Advisory Committee Notes, 1972 Proposed Rules.

---

[1]  In their motion, defendants never address the potential
admissibility of the documents under the business records exception.
(*See* Defs.' Objections and Mot. to Strike [35].)  This is a curious
and telling omission, given that paragraph 26 of the Baker affidavit
indicates the plaintiff's intent to establish the documents as
business records under Rule 803(6).

Here, the defendants simply offer their self-characterization of the attached documents as summaries, and, from that premise, they argue that the plaintiff has failed to invoke Rule 1006 or to satisfy the Rule's requirements. The documents provided by the plaintiff, however, are not a summary of a voluminous record, but are the records themselves. The loan history statement is a 29-page computer printout detailing each disbursement and payment, beginning on the date of the loan and continuing through April 2012. The post-foreclosure interest schedule similarly provides a simple data output of the interest due on the loan from the date of the foreclosure sale until May 2012.[2] For these reasons, the Court finds the attached documents to be business records, admissible under Rule 803(6), and not summaries under Rule 1006.

Accordingly, the defendants' objection to and motion to strike portions of the Baker Affidavit [35] is **DENIED.**

---

[2] The only document which even has the *appearance* of a summary is the payoff statement, simply because it is in the form of a table. Even if the Court were to accept the defendants' conclusory statements that the payoff statement was a summary, Rule 1006 clearly permits the use of a summary of business records provided "all of the records from which it is drawn are otherwise admissible." *Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518, 1525 (10th Cir. 1991). As the payoff statement recites the amounts from the loan history and the post-foreclosure interest schedule, it would be within the Court's discretion to admit it, which it does. *See U.S. v. Richardson*, 233 F.3d 1285, 1293 (11th Cir. 2000).

AO 72A
(Rev.8/82)

**B.  Amount Owed By Defendant-Guarantors**

Through the affidavit of Nathan Baker [30-3] at 5, plaintiff claims the following balances as of May 31, 2012:

| | |
|---|---|
| Principal: | $1,414,875.43 |
| Interest through 11/01/10: | $123,182.51 |
| Interest from 11/02/10-5/31/12: | <u>$289,797.93</u> |
| Total: | $1,827,855.87 |

In their response, defendants do not dispute these amounts, but instead only object to the admissibility of the documents relied upon to calculate those figures.  As explained above, the Court finds the documents to be admissible and thus properly relied upon by the plaintiff.  The Court therefore determines that the amounts asserted by plaintiff above, as due by the defendants, are correct, at least up to the dates specified.

Yet, while the principal amount of the loan remains constant, the interest due on the loan has continued to accumulate during the litigation.  Accordingly, to arrive at a final figure that will be incorporated into a judgment, the plaintiff shall revise these calculations to show the principal and interest balances due, as of **March 15, 2013.**  Plaintiff shall submit that calculation, along with any necessary explanations of methodology, to the Court and the defendants by **February 25.**  Should defendants have no objection,

11

those figures will be become the basis of a judgment to be entered on March 15, 2013.[3]

## IV. **ATTORNEY'S FEES**

### A. **Background**

Plaintiff has also moved to collect attorney's fees under the terms of the Loan Agreement and O.C.G.A. § 13-1-11. (Pl.'s Mot. for Summ. J. [30].) The parties disagree as to the method for calculating these fees, with plaintiff arguing that a flat percentage of the outstanding principal and interest balance determines the amount of attorney's fees owed and with defendants contending that plaintiff is entitled only to those attorney's fees that it actually incurred.

There will be a huge difference in the amount of attorney's fees awarded, depending on which party prevails. Relying on O.C.G.A. § 13-1-11(a)(2), plaintiff argues that it is entitled to attorney's fees that represent roughly 10% of the amount of principal and interest. Plaintiff has done the math and arrives at an attorney's fees figure of $424,721.93. As noted, defendants disagree with application of this statutory provision and argue that instead, as set out in the agreement, plaintiff is entitled only to those

---

[3] Issuance of a judgment on that date also assumes that there will also be no dispute about the amount of attorney's fees incurred by the plaintiff. *See* discussion *infra.*

AO 72A
(Rev.8/82)

attorney's fees that it actually incurred.  While plaintiff has
failed to set out what fees it has actually incurred, defendant
suggests, and the Court agrees, that the amount of attorney's fees in
this straightforward and uncomplicated case will be dramatically less
than the approximately half a million dollars that plaintiff seeks to
recover.

In making its argument, plaintiff relies on the loan agreement's
provision concerning attorney's fees.  (Stipulation [22] at Ex. 1, §
9.3.)  It is worth noting plaintiff's reliance on the loan agreement,[4]
instead of the guaranty agreements,[5] even though the latter would, at

---

[4]  Section 9.3 of the loan agreement states:

> If any attorney is engaged by Lender to enforce
> or defend any provision of this Agreement...then
> Borrower shall immediately pay to Lender, upon
> demand, the amount of **all attorneys' fees** and
> expenses and all costs **incurred** by Lender in
> connection therewith **wherever any Loan Document
> provides for the payment of a party's legal
> fees**, the **same shall mean reasonable attorney's
> fees actually incurred**, **without regard to
> statutory amounts**.

(Stipulation [22] at Ex. 1, § 9.3)(emphasis added).

[5]  Each guarantor agreement states:

> ATTORNEYS' FEES; ENFORCEMENT.  If any attorney
> is engaged by Lender to enforce or defend any
> provision of this Guaranty, or **any of the Loan
> Documents**...,Guarantor shall pay to Lender,
> immediately upon demand **all attorneys' fees and
> costs incurred** by Lender in connection
> therewith, together with interest thereon from

13

first glance, seem to control this matter.  The loan agreement explicitly contradicts the argument that plaintiff is making as to the method to calculate attorney's fees, while the guaranty agreements are a bit less emphatic.  Perhaps, plaintiff inferred that the guaranty agreement was arguably a "Loan Document," as referenced in the loan agreement, and therefore was subject to the more detailed attorney's fees provision of that loan agreement.

At any rate, it is plaintiff who is seeking this award and it is plaintiff who has filed this summary judgment motion.  Plaintiff is the architect of its own legal strategy, and plaintiff has indicated that the operative provision in this litigation is the attorney fee provision found in the loan agreement.  Moreover, defendants briefed this question based on the language of the loan agreement on which the plaintiff had relied.  Finally, the Court believes the result would be the same no matter whether the loan agreement or the guaranty controlled.  Indeed, plaintiff appears to be signaling its own acceptance of defendants' position that only fees actually incurred can be awarded, as plaintiff has failed even to file a reply brief

---

the date of such demand until paid at the rate
of interest applicable to the principal balance
of the Note....

(Stipulation [22] at Exs. 3 & 4, ¶ 10, of each document)(emphasis added).

14

demonstrating any disagreement with defendants' substantive arguments and citations of authority. Accordingly, the Court will assume that the attorney's fees provision of the loan agreement controls.

### B. Fees "Actually Incurred" Versus Fees Set By Statute

Both the loan agreement and the guaranty agreements provide that the lender, which is plaintiff here, is entitled only to those attorney's fees that it incurred. Stated another way, if the plaintiff did not incur the fees, it cannot enjoy a windfall by obtaining monies that exceed the amount of those actual fees. As noted, the loan agreement is a bit more emphatic than the guaranty agreements in making clear this point. Specifically, beyond just noting that only "incurred" fees should be awarded, the loan agreement goes on to indicate that the phrase "actually incurred," should be construed "without regard to statutory amounts." (Stipulation [22] at Ex. 1, § 9.3.) Of course, it is "statutory amounts" that plaintiff is seeking here.

The statute on which plaintiff relies--O.C.G.A. § 13-1-11(a)(2)-- provides that where the indebtedness exceeds $500, the lender shall be entitled to 10% of the amount of principal and interest over the $500 threshold:

> ....
>
> (a)(1)    If such note...provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and

> obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note...;
>
> (a)(2)   If such note...provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note...and 10 percent of the amount of principal and interest owing thereon in excess of $500.00....

O.C.G.A. § 13-1-11(a)(1) and (a)(2).

The parties did not fix attorney's fee at a particular percentage of the outstanding loan balance. Accordingly, § 13-1-11(a)(1) does not apply. Because no set percentage was fixed as the means to assess attorney's fees, plaintiff argues that § 13-1-11(a)(2) applies. Applying that statute here, plaintiff argues that, as the principal and interest owed to it exceeds $500, its attorney's fees should be set at 10% of the amount exceeding $500,[6] which, as noted, would result in attorney's fees of $424,721.93. The question then becomes whether the terms of the agreements apply (attorney's fees incurred) or whether the statute controls (attorney's fees in the amount of 10% of the outstanding principal and interest, no matter what may have been incurred and no matter what the agreement said).

---

[6]   Plaintiff also presumably seeks, under this statute, 15% of the first $500 owed, or $75, which has been factored into plaintiff's calculations.

16

Relying entirely on the statutory language found in § 13-1-11(a)(2), plaintiff cites no case law authority.[7] Defendants counter that, no matter how rigid the above statute may be when it is actually applicable,[8] it cannot override the parties' ability to contract for a different means of ascertaining attorney's fees, and that the parties here did just that.

In support of their argument that O.C.G.A. § 13-1-11(a) does not mandate the recovery of the statutory calculation of attorney fees in every case, defendants cite to the relatively recent case of *S&A Indus., Inc. v. Bank Atlanta*, 247 Ga. App. 377 (2000). In *S&A Indus., Inc.*, the parties had agreed that should the bank have to hire an attorney to collect the borrower's debt, the latter would pay attorney's fees that the bank had incurred, but not to exceed 15% of the outstanding principal and interest balance. The borrower did default and, in its subsequent litigation to obtain a judgment on this outstanding balance, the bank sought attorneys fees in the amount of

---

[7]     Further, as noted, plaintiff has filed no reply brief to defendants' response.

[8]     Perhaps in response to the potentially draconian and disproportional amount of attorney's fees that could be levied under this statute, the Georgia legislature recently amended § 13-1-11 to include a provision under which the debtor may challenge the amount of statutory attorney's fees.  *See* 2012 Ga. Laws 725.  Under the newly amended statute, a debtor may challenge, as being unreasonable, any attorney's fee award under § 13-1-11(a)(2) that is greater than $20,000.  *Id.*  The amended statute, however, only applies to contracts entered on or after July 1, 2011.  *Id.*

15% of the above balance, without any showing that fees at this level were incurred. The trial court denied the borrower's motion to limit attorney's fees to only those fees that were actually incurred.

On appeal, the Georgia Court of Appeals reversed this ruling by the trial court, noting that O.C.G.A. § 13-1-11(a) does not mandate the recovery of attorney's fees, in every case, in the percentage amount set out by statute. *Id.* at 383. Rather, where the parties have also contracted that an award can be made only for attorney's fees that were incurred, the bank can recover only those fees that were actually incurred, § 13-1-11(a) notwithstanding; and, per the parties' agreement, those fees could not exceed 15% of the loan balance. *Id.*

The present case is similar to *S&A Indus.,Inc.*, except here the parties went even further in memorializing their intention not to be bound by any flat percentage method of calculation found in § 13-1-11(a)(2). Specifically, the loan agreement on which plaintiff relies provides that, upon default, the defendants will be liable for all attorney's fees that were *incurred* by the plaintiff and that whenever reference has been made to "the payment of a party's legal fees," the latter would "mean [the] reasonable attorney's fees *actually incurred, without regard to statutory amounts*." (Stipulation [22] at Ex. 1, § 9.3)(emphasis added).

Translated: the parties here did not intend to be bound by any statutory calculation of attorney's fees. Section 13-1-11(a), on which plaintiff relies, is a statutory calculation. Moreover, as *S&A Indus., Inc.*, was published prior to the parties' execution of the contract here, one can reasonably assume that defendants relied on that decision in making their bargain.

In short, the Court concludes that the parties here contracted for the payment of only those attorney's fees that were actually incurred. Under *S&A Indus., Inc.*,[9] the Court concludes that the

---

[9] Although not cited by plaintiff, the Court's own research has uncovered an Eleventh Circuit decision predating *S&A Indus., Inc.* that is inconsistent with the latter decision by the Georgia Court of Appeals. In *Pac. Mut. Life Ins. Co. v. Wise*, 878 F.2d 1398, 1399-1400 (11th Cir. 1989), the guarantor had agreed to pay a reasonable attorney's fee and all other costs that might be incurred by the lender in enforcing the guaranty. Acknowledging that application of the statutory percentage set out in § 13-1-11 would result in "grossly excessive attorney's fees" for the lender, the federal court nevertheless concluded that, under Georgia law, a provision for reasonable attorney's fees incurred by the lender meant that one had to use the percentage formula set out in the statute to calculate attorney's fees. *Id.* at 1400.

There is one factual distinction between this case and *Pac. Mut. Life Ins. Co.*, however. In the latter, the parties had used only the generic "reasonable attorney's fees" language, whereas here the parties had, as part of their bargain, explicitly rejected use of "statutory amounts" in calculating attorney's fees.

Even if that is a distinction that should not create a different result, the Court is obliged to apply Georgia law in this case. And Georgia appellate courts are superior arbiters of their own law than is a federal district or appellate court. *Cf. Rodgers v. First Union Nat'l Bank*, 220 Ga. App. 821, 822 (1996)(Georgia appellate courts are "not bound by decisions of...federal courts except the United States

plaintiff must demonstrate what those actual fees were.  Accordingly,

plaintiff's motion for summary judgment on attorney's fees is **DENIED**.

Plaintiff shall file an itemized statement of its attorney's fees by

**February 25, 2013**.   If there is no disagreement by defendants to

these fees, they will be incorporated into a judgment to be issued by

the Court on March 15, 2013.[10]

---

Supreme Court."  In *S&A Indus., Inc.*, *infra,* which is a case that
presented a stronger argument for the lender than do the facts here,
the Georgia Court of Appeals held that contractual language allowing
for imposition of only those attorney's fees that were incurred
trumps the statutory language that imposes a flat percentage rate for
calculation of the fees.   According to the Georgia court, the
statutory percentage established only a cap beyond which fees could
not be assessed.

   *S&A Indus., Inc.* was released after the Eleventh Circuit's *Pac.
Mut. Life Ins. Co.* decision.  The Court is aware of no Eleventh
Circuit case that has disavowed *S&A Indus., Inc.*.  The latter is the
Georgia appellate court's most recent pronouncement on this issue,
and this Court therefore follows the Georgia court's ruling.

   [10] Defendants did not formally file their own motion for summary
judgment, but their response brief sets out their position on the
appropriate method to calculate attorney's fees, which is the method
that this Court has endorsed in this Order.  Moreover, if    the
statutory formula were not applicable, the only other conceivable
formula would be the one advocated by defendants and adopted by the
Court: that is, fees actually incurred.   Indeed, given a choice
between an award of no fees and an award of fees that were actually
incurred, the Court feels certain that plaintiff would choose the
latter.

   FED. R. CIV. P. 56(f) allows the Court, upon notice and a
reasonable time for response, to "grant summary judgment for a
nonmovant" and/or to "consider summary judgment on its own after
identifying for the parties material facts that may not be genuinely
in dispute." FED R. CIV. P. 56(f)(1) and (3).   In this case, the
plaintiff was effectively given notice, through defendants' response

AO 72A
(Rev.8/82)

### CONCLUSION

For the above reasons, the Court **GRANTS in part** and **DENIES in part** plaintiff's Motion for Summary Judgment [30] and **DENIES** defendants' Objections and Motion to Strike [35] portions of the Baker Affidavit.

Plaintiff should file, by **February 25, 2013,** its revised calculation of the principal and interest due by defendants as of March 15, 2013, as well as its itemized breakdown of the attorney's fees it has incurred. Should the defendants contest those figures, they must file their opposition to plaintiff's calculations by **March 11, 2013**. Any objections by defendants must explain specifically the basis for their disagreement and the alterative calculations that defendants proffer.

SO ORDERED, this <u>12th</u> day of FEBRUARY, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

---

brief, that the defendants proposed that the Court award only attorney's fees actually incurred by plaintiff. The plaintiff chose not to respond to defendants' argument. The Court concludes that adequate notice has been given.

AO 72A
(Rev.8/82)